## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

AMERICAN CIVIL LIBERTIES UNION,
915 Fifteenth Street NW, 7th Floor
Washington, DC 20005,

        *Plaintiff*,

    v.

U.S. DEPARTMENT OF HOMELAND
SECURITY,
245 Murray Lane, SW
Washington, DC 20528,

U.S. IMMIGRATION AND CUSTOMS
ENFORCEMENT,
500 Twelfth Street, SW
Washington, DC 20536,

        *Defendants*.

No. _____

## COMPLAINT
## (Freedom of Information Act)

1.    Plaintiff American Civil Liberties Union ("ACLU") brings this action against the United States Department of Homeland Security ("DHS") and the United States Immigration and Customs Enforcement ("ICE") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201–02. The ACLU seeks declaratory and injunctive relief to compel Defendants' compliance with the requirements of FOIA to immediately release improperly withheld agency records regarding access to counsel in ICE detention facilities.

2.    Immigrants detained in ICE facilities are often functionally deprived of access to counsel. As of September 2022, more than 25,000 immigrants are held in nearly 185 ICE detention

centers nationwide.[1]

3.      For detained immigrants, access to counsel can mean the difference between freedom and the ability to remain in the United States on the one hand and prolonged detention and deportation on the other. Detained immigrants with representation are almost **seven times** more likely to be released from custody.[2] Similarly, detained immigrants who are represented by counsel are over 10 times more likely to win their immigration cases than those who are not represented.[3]

4.      Although immigrants have a right to legal representation in immigration proceedings, they do not have a right to government-appointed counsel. Detained immigrants are entirely responsible for finding their own attorneys (paid or pro bono)—an extremely difficult proposition for any detained person, but one that is made exponentially harder by the systemic barriers to communication in ICE detention centers. In 2022, an independent immigration tracking service reported that 81.1% of detained immigrants in deportation (also referred to as "removal") proceedings are not represented by counsel.[4]

5.      ICE limits detained immigrants' access to counsel by: barring access to legal telephone calls, including by withholding from detained immigrants the option to schedule telephone calls in advance; exacting prohibitive costs for telephone calls (up to $0.40 per minute); denying or arbitrarily delaying in-person visits; and failing to provide confidential settings for

---

[1] Syracuse University, Transitional Records Access Clearinghouse (TRAC) Immigration, *Immigration Detention Quick Facts* (as of September 10, 2022), https://trac.syr.edu/immigration/quickfacts/.

[2] Ingrid V. Eagly & Steven Shafer, *A National Study of Access to Counsel in Immigration Court*, 164 U. Pa. L. Rev. 1, 70 (2015), https://bit.ly/3lxUOUU.

[3] *Id.* at 49.

[4] Syracuse University, Transitional Records Access Clearinghouse (TRAC) Immigration, *State and County Details on Deportation Proceedings in Immigration Court* (through February 2022), https://trac.syr.edu/phptools/immigration/nta/ (field selections: Immigration Court State: All; Custody: Detained; Represented: Not Represented).

telephone calls and in-person visits.[5] Immigrants in ICE detention facilities must further contend

with critical delays in legal mail and the unavailability of video conference or email as methods of

communication.

6.      Even when a detained immigrant overcomes these hurdles to retain an attorney,

communication issues interfere with attorneys' ability to provide representation. At times,

attorneys are forced to seek continuances because they are unable to contact or consult with their

clients before a filing deadline. Many ICE facilities are also in remote locations that are difficult

for attorneys to visit, even if the detention center allows scheduled meetings. And when in-person

visits are possible, the lack of private meeting spaces (out of earshot of ICE officers and other

people in the facility) means that immigrants may have difficulty discussing privileged and other

sensitive issues.[6]

7.      Federal courts have found that the policies and practices at ICE detention facilities

severely limit detained immigrants' access to counsel and violate their constitutional and statutory

rights.[7] Elected officials have likewise deemed the restrictions a significant due process issue.[8] In

2020, a House Homeland Security Committee Report highlighted the importance of access to

---

[5] *See* ACLU, *No Fighting Chance: ICE's Denial of Access to Counsel in U.S. Immigration Detention Centers* (2022), https://www.aclu.org/report/no-fighting-chance-ices-denial-access-counsel-us-immigration-detention-centers (hereinafter "ACLU, *No Fighting Chance*").

[6] *Id.*

[7] *See Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1163 (D. Or. 2018) ("ICE attorney visitation policies and practices have the 'cumulative effect' of denying detainees constitutionally sufficient access to legal assistance."); *see also Torres v. DHS*, 411 F. Supp. 3d 1036 (C.D. Cal. 2019) (denying motion to dismiss complaint alleging that detention facility's impediments to accessing counsel violated noncitizens' statutory and constitutional right to counsel).

[8] *See, e.g.*, California Department of Justice, Office of the Attorney General, *Immigration Detention in California* (Jan. 2021), https://oag.ca.gov/sites/all/files/agweb/pdfs/publications/immigration-detention-2021.pdf.

counsel in ICE detention, concluding that "it is important that facilities offer migrants access to legal resources" because "[a]ccess to legal information and services is critical for migrants in detention," and "the nature of detention offers limited opportunities for migrants to effectively pursue their immigration case."[9] The media has also shown significant interest in ICE's denial of access to counsel to immigrants in detention.[10]

8.      ICE has promulgated detention standards, which provide certain access-to-counsel requirements that detention centers are obligated to meet.[11] The standards require detention centers to provide, among other things: access to legal services; mail and a postage allowance; free telephone calls to legal service providers; privacy for telephone calls regarding legal matters; legal visitation, including from legal service providers, seven days a week; and law library access.[12]

9.      Detained immigrants in ICE custody, the attorneys and advocates who represent their interests, and the public require further information about the difficulties detained people face

---

[9] United States House of Representatives, Committee on Homeland Security, *ICE Detention Facilities Failing to Meet Basic Standards*, Sep. 21, 2020, https://homeland.house.gov/imo/media/doc/Homeland%20ICE%20facility%20staff%20report.pdf.

[10] *See, e.g.*, Bill Keveney, *ICE Limits Migrants' Legal Rights, Raising Deportation Risk, ACLU Report Says*, USA Today (June 9, 2022), https://www.usatoday.com/story/news/nation/2022/06/09/legal-rights-migrants-ice-detention-limited-tech-woes/7538769001/; Suzanne Monyak, *ICE Claims 'Unabated' Legal Access In Detention During Pandemic*, Roll Call, (March 22, 2022), https://rollcall.com/2022/03/22/ice-claims-unabated-legal-access-in-detention-during-pandemic/.

[11] *See* ICE, *Performance-Based National Detention Standards 2008*, https://www.ice.gov/detain/detention-management/2008; ICE, Performance-Based National Detention Standards 2011, https://www.ice.gov/doclib/detention-standards/2011/pbnds2011r2016.pdf; ICE, *National Detention Standards 2019*, https://www.ice.gov/doclib/detention-standards/2019/nds2019.pdf; ICE, Family Residential Standards 2020, https://www.ice.gov/doclib/frs/2020/2020family-residential-standards.pdf.

[12] *Id.* at 3–14.

when seeking counsel, as well as ICE's oversight of detention facilities with respect to access to counsel.

10.     The ACLU seeks information regarding detention center policies and directives regarding access to counsel for individuals held in ICE detention centers, as well as reports about compliance deficiencies. The ACLU brings this action seeking declaratory and injunctive relief to compel Defendants' compliance with the requirements of FOIA to immediately release improperly withheld agency records.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B). The Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331, and authority to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201–02. The Court has personal jurisdiction over the parties.

12.     Venue is proper in this district under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

13.     Plaintiff American Civil Liberties Union is a nationwide non-profit, nonpartisan organization with over 1.7 million members dedicated to protecting the fundamental liberties and basic civil rights guaranteed by the state and federal Constitutions. The ACLU is committed to ensuring that the United States government complies with the Constitution and the laws of this country in matters that affect civil liberties and human rights, including the rights of prisoners and immigrants. The ACLU is also committed to principles of transparency and accountability in government and seeks to ensure that the American public is informed about the conduct of its government in matters that affect civil liberties and human rights. Obtaining information about

5

governmental activity, analyzing that information, and widely publishing and disseminating it to the press and the public is a critical and substantial component of the ACLU's work and one of its primary activities.

14.     Defendant Department of Homeland Security is an agency of the U.S. government within the meaning of 5 U.S.C. § 551, 5 U.S.C. § 552(f), and 5 U.S.C. § 702. DHS is headquartered in Washington, D.C., and has possession, custody, and control of the records that the ACLU seeks, including through its component office, ICE.

15.     Defendant Immigration and Customs Enforcement is a component of DHS and an agency of the U.S. government within the meaning of 5 U.S.C. § 551, 5 U.S.C. § 552(f), and 5 U.S.C. § 702. ICE is headquartered in Washington, D.C., and has possession, custody, and control of the records that the ACLU seeks.

## FACTS

16.     On December 17, 2021, the ACLU submitted a FOIA request to ICE via email (Exhibit A, "Request") seeking records related to access-to-counsel policies in immigration detention facilities and deficiencies in particular facilities' compliance with those policies, specifically requesting:

a.  All policies, instructions, manuals, directives, or guidance issued by ICE related to attorney-client communication for detainees. This includes all versions of documents that were in effect during the request period, as well as any updates, amendments, and attachments thereto. Specifically, we request that you search for and produce the following:

i.  Policies, instructions, manuals, directives, or guidance relating to legal representative in-person visitation, including scheduling and facilitation of legal visitation, at immigration detention facilities;

ii.  Policies, instructions, manuals, directives, or guidance relating to legal representative telephone communication at immigration detention facilities;

    iii. Policies, instructions, manuals, directives, or guidance relating to legal representative correspondence, including legal mail, faxes, and detainees' email access at immigration detention facilities;

    iv. Policies, instructions, manuals, directives, or guidance relating to law libraries and legal material at immigration detention facilities;

    v. Policies, instructions, manuals, directives, or guidance relating to virtual attorney (or legal representative) visitation, including video teleconferencing, at immigration detention facilities; and

    vi. Policies, instructions, manuals, directives, or guidance relating to the provision, maintenance, and functionality of electronic tablets issued to detainees at immigration detention facilities.

b. Uniform Corrective Action Plans ("UCAPs") issued by the Detention Standards Compliance Unit ("DSCU") since January 1, 2019, in which at least one deficiency concerns one of the following standards, as well as UCAPs containing proposed or completed corrective actions that were sent to DSCU by ICE Enforcement and Removal Operations field offices in response to any UCAPs requested herein:

    i. For facilities that are obligated to adhere to the 2000 National Detention Standards:

        1. Access to Legal Material;

        2. Correspondence and Other Mail; and

        3. Telephone Access;

    ii. For facilities that are obligated to adhere to the 2008 Performance-Based National Detention Standards:

        1. Part 5, Section 26: Correspondence and Other Mail;

        2. Part 5, Section 31: Telephone Access;

        3. Part 5, Section 32: Visitation; and

        4. Part 6, Section 36: Law Libraries and Legal Material;

    iii. For facilities that are obligated to adhere to the 2011 Performance-Based National Detention Standards:

        1. Standard 5.1: Correspondence and Other Mail;

        2. Standard 5.6: Telephone Access;

        3. Standard 5.7: Visitation; and

        4.    Standard 6.3: Law Libraries and Legal Material;

   iv.  For facilities that are obligated to adhere to the 2019 National Detention Standards for Non-Dedicated Facilities:

        1.    Standard 5.1: Correspondence and Other Mail;

        2.    Standard 5.4: Telephone Access;

        3.    Standard 5.5: Visitation; and

        4.    Standard 6.3: Law Libraries and Legal Materials;

   v.  For facilities that are obligated to adhere to the 2020 Family Residential Standards:

        1.    Standard 5.1: Correspondence and Other Mail;

        2.    Standard 5.8: Telephone Access;

        3.    Standard 5.9: Visitation; and

        4.    Standard 6.3: Law Libraries and Legal Material.

17.    The Request sought all responsive records from January 1, 2019, to the present.

18.    The ACLU sought expedited processing of the Request pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(e) because there was a "compelling need" for these records, and because the information sought was "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II); *see* 6 C.F.R. 5.5(e)(1)(ii). The ACLU explained in its Request that it is the kind of organization that may be awarded expedited processing because it is "primarily engaged in disseminating information" within the meaning of the statute. 5 U.S.C. § 552(a)(6)(E)(v)(II). Expedited processing shortens the deadline for an agency to respond to a FOIA request from 20 business days to 10 calendar days. *See* 5 U.S.C. § 552(a)(6)(E)(ii); 6 C.F.R. § 5.5(e)(4).

19.     The ACLU filed the Request with the intent to widely disseminate the requested information to the public at no cost, through a variety of sources, including reports, newsletters, news briefings, right-to-know handbooks, and other materials. Obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU's work and are among its primary activities.[13] The ACLU also maintains a website that it intended to use to distribute the information obtained through the Request.

20.     In the Request, the ACLU also sought a waiver of any fees associated with responding to the Request because (1) the disclosure is "likely to contribute significantly to public understanding of the operations or activities of the government," and (2) the Request is not primarily in the commercial interest of the ACLU. 5 U.S.C. § 552(a)(4)(A)(iii); 6 C.F.R. § 5.11(k). The ACLU further explained that it qualifies for a fee waiver or reduction of fees on the grounds that it qualifies as a "representative[] of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II); 6 C.F.R. § 5.11(d)(1).

21.     Having received no response after submitting the Request, the ACLU sent a status inquiry via email to ICE's FOIA office on January 7, 2022.

22.     The first communication the ACLU received regarding the Request came on May 5, 2022, almost five months later.

23.     On August 4, 2022, in response to the ACLU's phone and email inquiries, ICE notified the ACLU that it had "queried the appropriate component of DHS for responsive records"

---

[13] *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding the ACLU to be a non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information").

and still had not made any determination of releasability (though the statutory deadlines to process the Request had long passed). ICE stated that it granted the ACLU's request for a fee waiver and denied the request for expedited treatment.

24.    To date, ICE's FOIA office has acknowledged receipt of the Request, and assigned the Request a tracking number, 2022-ICFO-14649. No determination regarding the substance of the Request has been made, however, and the current "Status" of the Request is listed as "In Process" on ICE's FOIA Public Access Portal.[14]

25.    ICE has not met any of the statutory FOIA response deadlines, nor has it indicated whether it will comply with the Request. To date, ICE has not produced a single document. With each passing day, Defendants are further in breach of their requirements under FOIA to respond to the ACLU's request.

## CLAIM FOR RELIEF

### CLAIM I
### Violation of FOIA, 5 U.S.C. § 552
### Wrongful Withholding of Non-Exempt Responsive Records

26.    The ACLU properly requested records within the possession, custody, and control of Defendants.

27.    Defendants are agencies and components thereof subject to FOIA. Therefore, in response to a FOIA request they must release any non-exempt records and provide a lawful reason for withholding any materials.

28.    Defendants are wrongfully withholding non-exempt agency records requested by the ACLU by failing to produce non-exempt records responsive to the ACLU's FOIA requests.

---

[14] *See* Department of Homeland Security Freedom of Information Act Public Access Portal, https://foiarequest.dhs.gov/app/CheckStatus.aspx (last queried with Request Number 2022-ICFO-14649 on September 7, 2022).

29.     Defendants' failure to provide all non-exempt responsive records violates FOIA and applicable regulations.

30.     Because Defendants failed to comply with the applicable time-limit provisions of FOIA, the ACLU has constructively exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

31.     The ACLU is therefore entitled to declaratory and injunctive relief requiring Defendants to promptly produce all non-exempt records responsive to the ACLU's FOIA Request and to provide indexes justifying the withholding of any responsive records withheld under claim of exemption.

## REQUEST FOR RELIEF

WHEREFORE, the ACLU respectfully requests the Court to:

(a)     Declare unlawful Defendants' failure to comply with FOIA;

(b)     Declare that the ACLU is entitled to disclosure of the requested records;

(c)     Order Defendants to immediately process the ACLU's Request and to disclose, in their entirety, unredacted versions of all records responsive to the ACLU's Request that are not specifically exempt from disclosure under FOIA, including any non-identical copies of any such records;

(d)     Provide detailed justification for the withholding of any responsive records or portions of any responsive records;

(e)     Enjoin Defendants from charging the ACLU search, review, or duplication fees for the processing of the requests;

(f)     Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to the ACLU's Request;

11

(g)      Award Plaintiff reasonable attorney's fees and litigation costs incurred in this
         action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

(h)      Grant such other relief as the Court may deem just and proper.


Date:  September 28, 2022                      Respectfully submitted,

                                               */s/ Erin Dexter*
                                               Erin Dexter (D.C. Bar No. 1027839)
                                               MILBANK LLP
                                               1850 K Street, NW, Suite 1100
                                               Washington, DC 20006
                                               EDexter@milbank.com
                                               Telephone: 202-835-7547

                                               Eunice Cho (D.C. Bar No. 1708073)
                                               *echo@aclu.org*
                                               American Civil Liberties Union Foundation
                                               National Prison Project
                                               915 Fifteenth Street NW, 7th Floor
                                               Washington, DC 20005
                                               Telephone: (202) 548-6616

                                               Kyle Virgien (CA Bar No. 278747)*
                                               *kvirgien@aclu.org*
                                               American Civil Liberties Union Foundation
                                               National Prison Project
                                               39 Drumm Street
                                               San Francisco, CA 94111
                                               Telephone: (202) 393-4930

                                               Aditi Shah (NY Bar No. 5886254)*
                                               ashah@aclu.org
                                               American Civil Liberties Union Foundation
                                               National Prison Project
                                               125 Broad Street, 18th Floor
                                               New York, NY 10004
                                               Telephone: (212) 549-2500

                                               Arthur B. Spitzer (D.C. Bar No. 235960)
                                               American Civil Liberties Union Foundation
                                                of the   District of Columbia
                                               915 15th Street, NW – 2nd floor
                                               Washington, DC 20005
                                               202-601-4266
                                               Aspitzer@acludc.org

MILBANK LLP
Andrew M. Leblanc (D.C. Bar No. 479445)*
Danielle S. Lee (NY Bar No. 5690888)*
1850 K Street, NW, Suite 1100
Washington, DC 20006
ALeblanc@milbank.com
EDexter@milbank.com
DLee@milbank.com
Telephone: 202-835-7574

Chloe Jasper (Cal. Bar No. 336556)*
2029 Century Park East, 33rd Floor
Los Angeles, CA 90067
CJasper@milbank.com
Telephone: 424-386-4354

*Attorneys for Plaintiff American Civil Liberties Union*

*application for admission *pro hac vice* forthcoming