# EXHIBIT A

December 17, 2021

**SENT VIA E-MAIL**

U.S. Immigration and Customs Enforcement
Freedom of Information Act Office
500 12th Street SW, Stop 5009
Washington, DC 20536-5009
Email: ICE-FOIA@dhs.gov



Re:   **FOIA Request for Records Related to Access to Counsel Policies and Practices in Immigration Detention Facilities
(Fee Waiver & Expedited Proceeding Requested)**

Dear Freedom of Information Officer:

The American Civil Liberties Union ("ACLU") submits this Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, *et seq.*, request for production of records (the "Request") for policies, documents and data related to access to counsel for individuals in U.S. Immigration and Customs Enforcement ("ICE") detention. The ACLU also seeks a fee waiver, pursuant to 5 U.S.C. § 552(a)(4)(A) and 6 C.F.R. § 5.11(k), and expedited processing, pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(d). The justification for the fee waiver and expedited processing are set out in detail below.

**I.   Background**

The federal government has made access to legal representation and access to justice a priority.[1] Despite this commitment, the Department of Homeland Security (DHS) maintains a network of immigration detention facilities where people are routinely denied access to counsel and are prevented from effectively representing themselves. By letter to the administration dated October 29, 2021, the ACLU, American Immigration Council, and more than fifty partner organizations, detailed a range of obstacles to attorney access in immigration detention facilities nationwide.[2] ICE's Performance-Based National Detention Standards (PBNDS) and National Detention Standards (NDS) provide inadequate protections for

---

[1] *See* Memorandum on Restoring the Department of Justice's Access-to-Justice Function and Reinvigorating the White House Legal Aid Interagency Roundtable, 86 Fed. Reg. 27793 (May 18, 2021), https://bit.ly/2X30Ljx.
[2] *See* Letter from ACLU and the American Immigration Council to Alejandro Mayorkas, Secretary of Homeland Security, and Tae Johnson, Acting Director of U.S. Immigration and Customs Enforcement (Oct. 29, 2021), https://www.aclu.org/letter/coalition-letter-dhs-and-ice-access-counsel-immigration-detention.



attorney access, and ICE has failed to abide by or monitor compliance with even these inadequate standards, creating this crisis.[3]

The importance of legal representation for people in immigration proceedings cannot be overstated. A person who is represented by attorney is far more likely to succeed in immigration court.[4] Yet the immigration detention system has consistently made it a struggle for people held in detention to access counsel. Between 2007 and 2012, 86% of detained people in removal proceedings were unrepresented.[5] That number has not significantly improved. In Fiscal Year 2020, 70.9% of detained individuals did not have attorneys.[6] By locating most immigration detention facilities in geographically isolated locations far from immigration attorneys—especially the removal defense bar—and by limiting basic modes of communication such as confidential visitation, telephone access, video conferencing, the Internet, and email, among others, ICE makes it extraordinarily difficult for people in detention to find and retain an attorney.[7]

ICE also places burdens on attorneys trying to represent detained people, including its refusal to schedule legal calls with clients, failure to provide a timely way to have clients review and sign necessary documents, its hostile treatment of attorneys at detention centers, failure to provide sufficient private attorney-client meeting spaces, long wait times for in-person visits, and a host of other challenges that have reduced the number of attorneys able and willing to take detained cases. ICE has only exacerbated these problems in recent years by establishing new immigration detention facilities in geographically isolated locations.[8] These constant and systemic

---

[3] DHS Office of Inspector General, *ICE's Inspections and Monitoring of Detention Facilities Do Not Lead to Sustained Compliance or Systemic Improvements* (June 26, 2018), https://bit.ly/3FHGsJN.

[4] Ingrid V. Eagly & Steven Shafer, *A National Study of Access to Counsel in Immigration Court*, 164 U. Pa. L. Rev. 1, 48-59 (2015), https://bit.ly/3lxUOUU [hereinafter "Eagly, *Access to Counsel*"]; American Immigration Council, *Access to Counsel in Immigration Court*, 2-3 (Sept. 2016), https://bit.ly/2YB6X2v (explaining that among detained immigrants, people with lawyers were twice as likely to obtain relief than without lawyers).

[5] Eagly, *Access to Counsel* at 4.

[6] TRAC Immigration, *State and County Details on Deportation Proceedings in Immigration Court* (through October 2021), https://trac.syr.edu/phptools/immigration/nta/.

[7] Innovation Law Lab, et al., *Cut Off: How ICE Detention Facilities Block Communication* (Aug. 2021), https://bit.ly/3jEafK0.

[8] ACLU, NIJC, and Human Rights Watch, *Justice-Free Zones: U.S. Immigration Detention Under the Trump Administration*, 20-21 (2020), https://bit.ly/3mHMWzG [hereinafter "*Justice Free Zones*"].

2

barriers degrade and violate the constitutional, statutory, and regulatory rights of people in detention to due process and access to counsel.[9]

Despite multiple lawsuits in recent years,[10] complaints to the DHS Office of Civil Rights and Civil Liberties, and congressional inquiries, DHS and ICE have failed to resolve these persistent problems.

## II. Request for Information

**Definitions:**



For purposes of this request, the term "DHS" means Department of Homeland Security, and any components, subcomponents, offices, or personnel therein.

For purposes of this request, the term "ICE" means Immigration and Customs Enforcement, and any components, subcomponents, offices, or personnel therein.

For purposes of this request, "Detention Standards Compliance Unit" means the Detention Standards Compliance Unit of ICE's Enforcement and Removal Operations, and any components, subcomponents, offices, or personnel therein.

For purposes of this request, the term "immigration detention facility" has the same scope used in 6 C.F.R. § 115.5.

For purposes of this request, "detainee" means any person detained in an immigration detention facility or holding facility.

For purposes of this request, the term "documents" has the same scope used in Rule 34(a)(1) of the Federal Rules of Civil Procedure and shall encompass every writing or record of every type and description and every tangible thing that is or has been in the possession, custody, or control of the federal agency or agencies that are the subject of this request and their employees, to which they have access, or of which they have knowledge, including, but not limited to, newspaper articles, magazine articles, news articles, correspondence, letters, contracts, files, electronic mail, memoranda, stenographic notes, handwritten notes, drafts, studies, publications, books, pamphlets, catalogs, purchase orders, receipts, advertisements, direct mail solicitations, point-of-sale and point-of-purchase materials, notebooks,

---

[9] U.S. Const. amend V; 8 U.S.C. §§ 1362; 1229a(b)(4)(A); 5 U.S.C. § 555(b); 8 C.F.R. § 1003.16(b); 8 C.F.R. § 1292.5(b).

[10] *See, e.g.*, *Torres v. DHS*, 411 F. Supp. 3d 1036 (C.D. Cal. 2019); *S. Poverty Law Ctr. v. DHS*, No. cv-18-760, 2020 WL 3265533 (D.D.C. Jun. 17, 2020); *Lyon v. ICE*, 300 F.R.D. 628 (N.D. Cal. 2014).



diaries, models, devices, pictures, photographs, films, audiotapes, videotapes, computer records, voice recordings, maps, reports, surveys, minutes, data compilations, and statistical compilations, regardless of whether a particular document is privileged or confidential, and regardless of the form of storage (including, but not limited to, paper, microfiche, magnetic tape, magnetic disk (hard disk or floppy disk), CD-ROM, DVD, optical disk, or electronic storage device)

**Specific Records Requested:**

We request the records specified below from January 1, 2019 to the present (the "request period"), unless otherwise noted.

1. All policies, instructions, manuals, directives, or guidance issued by ICE related to attorney-client communication for detainees. This includes all versions of documents that were in effect during the request period, as well as any updates, amendments, and attachments thereto. Specifically, we request that you search for and produce the following:

    a. Policies, instructions, manuals, directives, or guidance relating to legal representative in-person visitation, including scheduling and facilitation of for legal visitation, at immigration detention facilities;

    b. Policies, instructions, manuals, directives, or guidance relating to legal representative telephone communication at immigration detention facilities;

    c. Policies, instructions, manuals, directives, or guidance relating to legal representative correspondence, including legal mail, faxes, and detainee email access at immigration detention facilities;

    d. Policies, instructions, manuals, directives, or guidance relating to law libraries and legal material at immigration detention facilities;

    e. Policies, instructions, manuals, directives, or guidance relating to virtual attorney (or legal representative) visitation, including video teleconferencing, at immigration detention facilities;

    f. Policies, instructions, manuals, directives, or guidance relating to the provision, maintenance, and functionality of electronic tablets issued to detainees at immigration detention facilities.



2. Uniform Corrective Action Plans (UCAPs) issued by the Detention Standards Compliance Unit (DSCU) since January 1, 2019 in which at least one deficiency concerns one of the following standards, as well as UCAPs containing proposed or completed corrective actions that were sent to DSCU by ICE Enforcement and Removal Operations field offices in response to any UCAPs requested herein:

- For facilities that are obligated to adhere to the 2000 National Detention Standards:
    - Access to Legal Material;
    - Correspondence and Other Mail; and
    - Telephone Access;

- For facilities that are obligated to adhere to the 2008 Performance-Based National Detention Standards:
    - Part 5, Section 26: Correspondence and Other Mail;
    - Part 5, Section 31: Telephone Access;
    - Part 5, Section 32: Visitation; and
    - Part 6, Section 36: Law Libraries and Legal Material;

- For facilities that are obligated to adhere to the 2011 Performance-Based National Detention Standards:
    - Standard 5.1: Correspondence and Other Mail;
    - Standard 5.6: Telephone Access;
    - Standard 5.7: Visitation; and
    - Standard 6.3: Law Libraries and Legal Material;

- For facilities that are obligated to adhere to the 2019 National Detention Standards for Non-Dedicated Facilities:
    - Standard 5.1: Correspondence and Other Mail;
    - Standard 5.4: Telephone Access;
    - Standard 5.5: Visitation; and
    - Standard 6.3: Law Libraries and Legal Materials;

- For facilities that are obligated to adhere to the 2020 Family Residential Standards:
    - Standard 5.1: Correspondence and Other Mail;
    - Standard 5.8: Telephone Access;
    - Standard 5.9: Visitation; and
    - Standard 6.3: Law Libraries and Legal Material.

Please construe this as an ongoing FOIA request, so that any records that come within the possession of the agency prior to your final response to this FOIA Request should also be considered within the Request's scope.



With respect to the form of production, *see* 5 U.S.C. § 552(a)(3)(B), the ACLU requests that responsive electronic records be provided electronically in their native file format, if possible, with all metadata and load files. Alternatively, the ACLU requests that the records be provided electronically in a text-searchable, static-image format (PDF), in the best image quality in the agency's possession, and that the records be provided in separate, Bates-stamped files. We request that you produce responsive materials in their entirety, including all attachments, appendices, enclosures, and/or exhibits. However, to the extent that a response to this request would require you to provide multiple copies of identical material, the request is limited so that only one copy of the identical material is requested. We request that you produce responsive materials in their entirety, including all attachments, appendices, enclosures, and/or exhibits. Please do not compress images or downsample the resolution, as this interferes with their legibility. To facilitate a speedy response, we ask that records responsive to this request be produced on a rolling basis. The ACLU will accept records and other information that have been redacted pursuant to the Health Insurance and Portability Accountability Act or other statutes or regulations protecting the privacy of individual detainees.

In the event you determine that materials contain information that falls within the statutory exemptions to mandatory disclosure, we request that such information be reviewed for possible discretionary disclosure. *See Chrysler Corp. v. Brown*, 441 U.S. 281,293 (1979). We also request that, in accordance with 5 U.S.C. § 552(b), any and all reasonably segregable portions of otherwise exempt materials be produced. To the extent the request is denied, we expect to receive notice in writing, including a description of the information withheld, the reasons for denial, and any exemptions relied upon.

### III.    Fee Waiver Request

The ACLU requests that any fees associated responding to its FOIA request be waived pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k). Pursuant to 5 U.S.C. § 552(a)(4)(A)(iii) and 6 C.F.R. § 5.11(k), fees should be waived or reduced if disclosure is (1) in the public interest because it is "likely to contribute significantly to public understanding of the operations or activities of the government" and (2) "not primarily in the commercial interest of the requester." Disclosure in this case meets both of these tests. The ACLU also requests a waiver or reduction of fees on the grounds that the ACLU qualifies as a "representative[] of the news media" and the records are not sought for commercial use. See 5 U.S.C. § 552(a)(4)(A)(ii)(II); 6 C.F.R. § 5.11(d)(1).

1. **Disclosure is in the public interest as it is likely to contribute significantly to the public's understanding of the operations and activities of government.**

Restrictions on access to counsel for ICE detainees is of great concern to the public. Elected officials at the state and federal level as well as federal judges, academics, journalists, and advocates, including bar associations, have analyzed, exposed, and, at times, sounded the alarm over the struggles ICE detainees encounter in locating, retaining, and communicating with counsel.



At the federal level, the House Homeland Security Committee published a report last year that addressed the challenges detainees face in gaining access to case information and legal services.[11] The report concludes that:

> Access to legal information and services is critical for migrants in detention. Especially for those making asylum claims, the process is not a simple one and may require multiple levels of appeal. Since the nature of detention offers limited opportunities for migrants to effectively pursue their immigration case, it is important that facilities offer migrants access to legal resources in order to properly pursue their claims.[12]

The report describes challenges faced by ICE detainees seeking to access legal counsel and recommends that ICE establish processes to better identify and correct deficiencies at its detention facilities.[13]

State-level elected officials have likewise devoted resources to assessing the ability of detainees to access counsel at immigration detention facilities. In January 2021, Xavier Becerra, then-Attorney General of California ("California AG"), published a report on ICE detention facilities in California.[14] The report addressed due process issues impacting detainees, including restrictions on access to counsel.[15] The report identifies myriad

---

[11] United States House of Representatives, Committee on Homeland Security, *ICE Detention Facilities Failing to Meet Basic Standards*, Sep. 21, 2020, https://homeland.house.gov/imo/media/doc/Homeland%20ICE%20facility%20staff%20report.pdf.
[12] *Id*. at 21.
[13] *Id*. at 21-23.
[14] California Department of Justice, Office of the Attorney General, *Immigration Detention in California* (Jan. 2021), https://oag.ca.gov/sites/all/files/agweb/pdfs/publications/immigration-detention-2021.pdf.
[15] *Id*. at 49, 81, 118.

barriers detainees in California immigration detention facilities face in communicating with counsel.[16]

United States courts confronted with legal challenges to the roadblocks ICE places on detained immigrants' abilities to access counsel have found those impediments so severe as to violate noncitizens' statutory and constitutional rights.[17]

Scholars have studied the barriers ICE detainees face when it comes to locating, retaining, and communicating with counsel, focusing in particular on the substantial statistical impact counsel has on the outcome of immigration proceedings.[18] The media has also reported on the access crisis faced by ICE detainees who struggle to retain and communicate with counsel,[19] as have advocates,[20] and numerous bar associations.[21]



---

[16] *Id.*

[17] *Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1163 (D. Or. 2018) (restrictions on legal visitation in ICE detention facilities were so severe for immigration detainees that they denied detainees constitutionally sufficient access to legal assistance); *see also Torres v. DHS*, 411 F. Supp. 3d 1036 (C.D. Cal. 2018) (denying motion to dismiss complaint alleging that detention facility's impediments on accessing counsel violated noncitizens' statutory and constitutional right to counsel).

[18] *See*, *e.g.*, Ingrid V. Eagly & Steven Shafer, *A National Study of Access to Counsel in Immigration Court*, 164 U. PA. L. REV. 1, 49 (2015), https://scholarship.law.upenn.edu/cgi/viewcontent.cgi?article=9502&context=penn_law_review; Note, *The Right to Be Heard from Immigration Prisons: Locating A Right of Access to Counsel for Immigration Detainees in the Right of Access to Courts*, 132 Harv. L. Rev. 726, 727 (2018); Zachary Manfredi & Joseph Meyers, *Isolated and Unreachable: Contesting Unconstitutional Restrictions on Communication in Immigration Detention*, 95 N.Y.U. L. REV. 130, 133 (2020).

[19] *See, e.g.,* Patrick G. Lee, PROPUBLICA, *Immigrants in Detention Centers are Often Hundreds of Miles from Legal Help*, May 16, 2017, https://www.propublica.org/article/immigrants-in-detention-centers-are-often-hundreds-of-miles-from-legal-help; Yuki Noguchi, NPR, *Unequal outcomes: Most ICE detainees held in rural areas where deportations risks soar*, Aug. 15, 2019, https://www.npr.org/2019/08/15/748764322/unequal-outcomes-most-ice-detainees-held-in-rural-areas-where-deportation-risks; Noah Lanard, Mother Jones, *ICE just quietly opened three new detention centers, flouting Congressional limits*, July 9, 2019, https://www.motherjones.com/politics/2019/07/ice-just-quietly-opened-three-new-detention-centers-flouting-congress-limits/.

[20] *See, e.g., Justice Free Zones* at 20-21; Letter from ACLU and the American Immigration Council to Alejandro Mayorkas, Secretary of Homeland Security, and Tae Johnson, Acting Director of U.S. Immigration and Customs Enforcement (Oct. 29, 2021), https://www.aclu.org/letter/coalition-letter-dhs-and-ice-access-counsel-immigration-detention.

[21] *See, e.g., Behind Closed Doors: An Overview of DHS Restrictions on Access to Counsel*, American Immigration Council, American Immigration Lawyers



The requested records will contribute substantially to the public's understanding of ICE's role in this matter of great public concern. The records sought will enable the public to better understand the policies and practices ICE has put in place—and failed to put in place—to ensure that those in their custody have meaningful access to counsel. The records will further show which immigration detention facilities are failing to adhere to standards governing access to counsel they are contractually obligated to adhere to, and how ICE responds—and fails to respond—to those failures.

## 2. Disclosure is not primarily in the commercial interest of the ACLU.

The ACLU is not filing this request to further a commercial interest. The ACLU is a 501(c)(3) nonprofit organization and therefore has no commercial interest. The ACLU intends to make any relevant information obtained through this FOIA available to the public. The ACLU publishes newsletters, news briefings, right-to-know handbooks, and other materials that are disseminated to the public. These materials are widely available to everyone, including tax-exempt organizations, not-for-profit groups, law students and faculty, for no cost or for a nominal fee.

The ACLU also publishes, analyzes, and disseminates information through its heavily visited website, www.aclu.org. The website addresses civil rights and civil liberties issues in depth, provides features on civil rights and civil liberties issues in the news, and contains many thousands of documents relating to the issues on which the ACLU is focused. The ACLU website also includes many features on information obtained through FOIA requests. For example, the ACLU recently published a report, *Behind Closed Doors: Abuse and Retaliation Against Hunger Strikers in U.S. Immigration Detention*, which contains commentary about the ACLU's FOIA request, analysis of FOIA documents, and links to the documents themselves.[22] ACLU's "Predator Drones FOIA" webpage, https://www.aclu.org/national-security/predator-drones-foia, contains commentary about the ACLU's FOIA request, press releases, analysis of the FOIA documents, numerous blog posts on the issue, documents related to litigation over the FOIA request, frequently asked questions about targeted killing, and links to the documents themselves. The ACLU has also published a number of charts and explanatory materials that collect, summarize, and analyze information it has

---

Association, and the Center for Immigrants' Rights at Pennsylvania State University's Dickinson School of Law, May 2012, https://www.americanimmigrationcouncil.org/research/behind-closed-doors-overview-dhs-restrictionsaccess-counsel.

[22] ACLU and Physicians for Human Rights, Report: *Behind Closed Doors: Abuse & Retaliation Against Hunger Strikers in U.S. Immigration Detention*, https://www.aclu.org/report/report-behind-closed-doors-abuse-retaliation-against-hunger-strikers-us-immigration-detention (last visited Dec. 17, 2021).

9

obtained through the FOIA. The ACLU plans to analyze, publish, and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use and the ACLU plans to disseminate the information disclosed as a result of this Request to the public at no cost.

> 3. **The ACLU also qualifies for a fee waiver because it is a representative of the news media and the records are not sought for commercial use.**



The ACLU is also entitled to a waiver of search fees on the grounds that the ACLU qualifies as a "representative of the news media" and the records are not sought for commercial use. 5 U.S.C. § 552(a)(4)(A)(ii)(II). The ACLU meets the statutory and regulatory definitions of a "representative of the news media" because it is an "entity that gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." 5 U.S.C. § 552(a)(4)(A)(ii)(III); *see supra*; *see also Nat'l Sec. Archive v. DOD*, 880 F.2d 1381, 1387 (D.C. Cir. 1989) (finding that an organization that gathers information, exercises editorial discretion in selecting and organizing documents, "devises indices and finding aids," and "distributes the resulting work to the public" is a "representative of the news media" for purposes of the FOIA); *ACLU v. U.S. Dep't of Justice*, 321 F. Supp. 2d 24, 30 n.5 (D.D.C. 2004) (finding non-profit public interest group to be "primarily engaged in disseminating information").

Obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. For example, the ACLU regularly publishes ACLU Magazine that reports on and analyzes civil liberties-related current events. The magazine is disseminated to over 950,000 households. The ACLU also publishes regular updates and alerts via email to approximately 4 million subscribers (both ACLU members and nonmembers). These updates are additionally broadcast to 4.9 million social media followers (members and non-members). The magazine, email, and social-media alerts often include descriptions and analysis of information obtained through FOIA requests.

The ACLU also regularly issues press releases to call attention to documents obtained through FOIA requests, as well as other breaking news, and ACLU attorneys are interviewed frequently for news stories about documents released through ACLU FOIA requests.  Similarly, ACLU national projects regularly publish and disseminate reports that include a description and analysis of government documents obtained through FOIA

requests. This material is broadly circulated to the public and widely available to everyone for no cost or, sometimes, for a small fee.

The ACLU also regularly publishes books, "know your rights" materials, fact sheets, and educational brochures and pamphlets designed to educate the public about civil liberties issues and government policies that implicate civil rights and liberties. The ACLU publishes a widely read blog where original editorial content reporting on and analyzing civil rights and civil liberties news is posted daily. *See* https://www.aclu.org/blog. The ACLU creates and disseminates original editorial and educational content on civil rights and civil liberties news through multi-media projects, including videos, podcasts, and interactive features. *See* https://www.aclu.org/multimedia.



Underscoring this point, courts have found that other organizations whose mission, function, publishing, and public education activities are similar in kind to the ACLU's are "representatives of the news media" as well. *See*, *e.g.*, *Cause of Action v. IRS*, 125 F. Supp. 3d 145 (D.C. Cir. 2015); *Elec. Privacy Info. Ctr.*, 241 F. Supp. 2d 5, 10-15 (D.D.C. 2003) (finding non-profit public interest group that disseminated an electronic newsletter and published books was a "representative of the news media" for purposes of the FOIA); *Nat'l Sec. Archive v. U.S. Dep't of Defense*, 880 F.2d 1381, 1387 (D.C. Cir. 1989); *Judicial Watch, Inc. v. DOJ*, 133 F. Supp. 2d 52, 53-54 (D.D.C. 2000) (finding Judicial Watch, self-described as a "public interest law firm," a news media requester).

As a representative of the news media, the ACLU plans to analyze and disseminate to the public the information gathered through this Request. The records requested are not sought for commercial use. On account of these factors, fees associated with responding to FOIA requests are regularly waived for the ACLU as a "representative of the news media." A fee waiver would fulfill Congress's legislative intent in amending FOIA. Additionally, on account of these factors, the ACLU has not been charged fees associated with responding to FOIA requests on numerous occasions.

In sum, because disclosure of the requested documents is in the public interest and not primarily in the commercial interest of the requester, and because the ACLU is a representative of the news media, the ACLU is entitled to a total waiver of fees associated with this Request and should, in no event, be required to pay more than reasonable standard charges for document duplication. In the event that you decide not to waive the fees, please provide us with prior notice so that we can discuss arrangements.

### IV.  Expedited Processing Request

The ACLU requests expedited processing of this Request pursuant to 5 U.S.C. § 552(a)(6)(E) and 6 C.F.R. § 5.5(e). There is a "compelling need" for these records, as defined in the statute, because the information requested is "urgen[tly]" needed by an organization primarily engaged in disseminating information "to inform the public concerning actual or alleged Federal Government activity." 5 U.S.C. § 552(a)(6)(E)(v)(II); *see also* 6 C.F.R. 5.5(e)(1)(ii).



1. **The ACLU is an organization primarily engaged in disseminating information in order to inform the public about actual or alleged government activity.**

The ACLU is "primarily engaged in disseminating information" within the meaning of the statute. 5 U.S.C. § 552(a)(6)(E)(v)(II). As detailed supra, the ACLU has the ability and intention to widely disseminate the requested information through a variety of sources, including reports, newsletters, news briefings, right-to-know handbooks, and other materials, to the public at no cost. Indeed, obtaining information about government activity, analyzing that information, and widely publishing and disseminating that information to the press and public are critical and substantial components of the ACLU's work and are among its primary activities. *See ACLU v. Dep't of Justice*, 321 F. Supp. 2d 24, 29 n.5 (D.D.C. 2004) (finding non-profit public interest group that "gathers information of potential interest to a segment of the public, uses its editorial skills to turn the raw material into a distinct work, and distributes that work to an audience" to be "primarily engaged in disseminating information"). Moreover, as mentioned supra, the ACLU intends to distribute the information obtained through this FOIA request via the ACLU website and/or means available to us.

2. **The records sought are urgently needed to inform the public about actual or alleged government activity.**

The requested records are also urgently needed to inform the public about actual or alleged government activity. *See* 5 U.S.C. § 552(a)(6)(E)(v)(II).

ICE detainees' ability to access counsel in their immigration cases is a matter of widespread media and public interest, and the requested records will inform the public concerning this issue. Barriers to accessing counsel faced by those in ICE detention facilities has been a significant topic of news media coverage, and continues to receive ongoing public, media, and congressional attention.[23] Members of Congress have expressed serious

---

[23] *See supra* notes 19-21.

concerns about the ability of ICE detainees to locate, retain, and communicate with counsel.[24] Thus, the urgency to inform the public goes beyond the general public interest in government transparency—it responds to ongoing serious concerns from Congress and the public, and will answer specific questions that have very recently been raised regarding ICE's stated commitment to "enhanc[ing] individuals' access to legal resources and representation while in ICE custody[,]"[25] and its willingness to hold contractors accountable for failing to adhere to ICE's own detention standards.[26]



Given the foregoing, the ACLU has satisfied the requirements for expedited processing of this Request.

I affirm that the information provided supporting the request for expedited processing is true and correct to the best of my knowledge and belief. *See* 5 U.S.C. § 552(a)(6)(E)(vi) and 6 C.F.R. § 5.5(d)(3).

Thank you for your prompt attention to this Request.  We look forward to your reply to this Request within ten (10) business days, as required under 5 U.S.C. § 552(a)(6)(E)(ii) and 6 C.F.R. § 5.5(e)(4). Please furnish all responsive records to:

>Patrick Taurel
>ACLU National Prison Project
>915 15th St. NW, 7th Floor
>Washington, DC 20005
>ptaurel@aclu.org

If this Request is denied in whole or part, we ask that you justify all deletions by reference to specific exemptions of the FOIA.  We expect the release of all segregable portions of otherwise exempt material. We reserve the right to appeal a decision to withhold any information, or to deny a waiver of fees. Please call me at (202) 548-6606 if you have any questions or wish to obtain further information about the nature of the records in which we are interested.

---

[24] United States House of Representatives, Committee on Homeland Security, *ICE Detention Facilities Failing to Meet Basic Standards*, Sep. 21, 2020, https://homeland.house.gov/imo/media/doc/Homeland%20ICE%20facility%20staff%20report.pdf.

[25] ICE, Fact Sheet, *Legal Access in Detention* (Aug. 2021), https://www.ice.gov/doclib/detention/LegalAccessAtAGlance.pdf.

[26] Dept. of Homeland Security Office of Inspector General, *ICE Does Not Fully Use Contracting Tools to Hold Detention Facility Contractors Accountable for Failing to Meet Performance Standards* (OIG-19-18), Jan. 29, 2019, https://www.oig.dhs.gov/sites/default/files/assets/2019-02/OIG-19-18-Jan19.pdf.

Respectfully submitted,

Patrick Taurel
American Civil Liberties Union
National Prison Project
915 15th St. NW, 7th Floor
Washington, DC 20005
ptaurel@aclu.org

